CALEB WYCKOFF, one of the executors of SIMON F. WYCKOFF, deceased,

*v.*

SALLY C. WYCKOFF, and MICHAEL ROSEBERRY, the other executor of SIMON F. WYCKOFF, deceased.

1. On a loan of money, the rate of interest agreed upon, or, if no rate be agreed upon, the rate allowed by law, at the date of the contract, will be the rate which the contract will bear until the money is paid.

2. And this will be so while the contract remains in force, notwithstanding any change in rate which may, in the meantime, be made by law.

3. Parties dealing for themselves may, however, enter into contracts by which the rate to be paid may change whenever the legal rate changes.

4. Where a testator directs his lands to be sold, and a part of the purchase money to be invested on the land sold, in such manner as that the interest

thereon shall be paid annually to his widow, and the principal to his executor on her death, the rate of interest allowed by law, at the date of the investment, cannot be changed subsequently, to the prejudice of the widow, without her consent.

5. A trustee cannnot use his position to make a profit out of his *cestui que trust.*

On hearing on demurrer.

*Mr. William H. Morrow,* for demurrant.

*Mr. J. G. Shipman,* for complainant.

VAN FLEET, V. C.

The question presented for decision in this case arises on a general demurrer to the complainant's bill. The suit is brought by one of the two executors of the will of Simon F. Wyckoff, deceased, against the testator's widow and the other executor. One of the executors is made a defendant because he refuses to join in the suit. The widow demurs.

The material facts alleged in the bill may be summarized as follows : Simon F. Wyckoff died testate November 25th, 1868. His will was admitted to probate in December following, and letters testamentary granted thereon to the complainant and his co-executor. By his will, the testator gave his widow, during her life, the interest of $13,000, and directed that the first year's interest should be considered due on the day of his death, and that thereafter the same should be paid to her annually. His will then says :

"In order that her annual interest may be rendered secure to her, I order and direct my executors to sell, at public sale, all my real estate, and secure by bond and mortgage on the farm on which Michael Roseberry now lives, from the purchaser, the interest on $6,500, to be paid to her annually during her life, and the principal to be paid to my executors at the death of my wife."

Direction for the investment of another sum of $6,500 of purchase money, on another farm, is then given in language substantially identical. This provision for the widow was made, as

Wyckoff *v.* Wyckoff.

the will states, in lieu of dower in the testator's real estate, and also of any right, which she was entitled to by law, in his personal estate. The widow accepted the provision. Both farms were sold and conveyed pursuant to the direction of the will—the one on which Michael Roseberry lived to Charity Race, and the other to John C. Miller. The executors took from each of the purchasers a bond and mortgage for $6,500, conditioned for the payment of interest and principal as the will directs. The papers bear date April 1st, 1869. The bill says:

"The bonds and mortgages provided for the payment of the just and full sum of $6,500 on the day of the death of Sally C. Wyckoff, together with lawful interest thereon from the 1st day of April, 1869, to be paid on the 25th day of November, 1869, and so on, on the 25th day of November of each and every year thereafter, for and during the natural life of the said Sally C. Wyckoff."

Since the 1st of April, 1869, the complainant has taken a conveyance of the farm purchased by Charity Race, and the other executor has taken a conveyance of the other farm. Each took title subject to the mortgage, and assumed the payment of both the principal and interest thereof. The complainant claims, in consequence of the change in the rate of interest made by legislation taking effect July 4th, 1878, reducing the rate from seven to six per cent., that the widow, since that date, by the true construction of the testator's will, is entitled to only six per cent., and he brings this suit to procure a decree so adjudging.

The defendant, by her demurrer, says that the facts above-stated do not lay the slightest foundation for judicial action of the kind which the complainant seeks. I am quite strongly of that opinion. The bonds and mortgages, which the executors hold for the benefit of the widow, are contracts to forbear demanding the payment of money in consideration that interest shall be paid, and where that is the case, the sum recoverable, if default be made in payment, is interest proper, and not damages. The law regulating the rate of interest which will accrue under such a contract, notwithstanding a change in rate may be effected by legislation subsequent to the date of the contract, is definitely

settled in this state.   Chief-Justice Beasley, speaking for the court
of errors and appeals, in *Jersey City* v. *O'Callaghan, 12 Vr. 349,
353,* said: "Interest proper arises whenever money is lent or
foreborne with an understanding, express or implied, that an
equivalent shall be given for its use, and in such case the rate of
interest agreed upon, or, if none such be agreed upon, the rate
then existing by law is, in the absence of any new agreement, the
rate to be paid until the return of the money." And this will
be so, notwithstanding any change in the rate which may be
made by legislation between the date of the contract and the re-
turn of the money.   The other pertinent cases are *Ackens* v.
*Winston, 7 C. E. Gr. 444; Bowne* v. *Ritter, 11 C. E. Gr. 456,*
and *Wilson* v. *Cobb, 4 Stew. Eq. 91.*   There can be no doubt
that, under the legal rule in force in this state, the mortgage debts
which the complainant and his co-executor hold for the benefit
of Mrs. Wyckoff, bear interest at the rate of seven per centum
per annum, and, in my judgment, it is equally certain that,
inasmuch as the contracts on which interest accrues were made
by persons standing in the position of trustees for Mrs. Wyckoff,
the rate, as between her and her trustees, is unalterably fixed by
the contracts, and cannot be changed except with her consent.

Parties dealing for themselves may enter into contracts by
which the rate of interest to be paid shall change whenever the
legal rate changes.   In *Mucklar* v. *Cross, 3 Vr. 423,* the plain-
tiff claimed, that, by the condition of the bond sued on, the
defendant became bound, on the change in the rate of interest
made in 1866, from six to seven per centum, to pay the higher
rate.   The defendant, by the condition of his bond, had bound
himself to pay interest annually, at such rate, as, at the date of
his bond, was, or should thereafter be fixed, by the legislature,
as the legal rate.   The court decided that the plaintiff, after the
change in rate, was, under the terms of his contract, entitled to
the higher rate.   "This result," said the court, "is only reached
because of the express agreement of the parties, that the interest
should be payable in accordance with the fluctuations in the legal
rate.   Obviously, a different result would have been arrived at,
if the stipulation had been for interest payable according to law

or for lawful interest. In that case the agreement would have been, that the interest should be such as was lawful when the contract was made. And it would have been unaffected by the act of 1866." The competency of the complainant and his co-executor to make a contract, in respect to the fund which they were directed to invest, by which the rate of interest should vary with each change in the legal rate, may, I think, be successfully denied. The only power they possessed was that conferred by the will. The testator directed the $13,000 to be invested as a life provision for his widow; the provision was not an act of bounty, but was made in lieu of dower; the rate of interest in the testator's mind when he made the provision was seven per centum; he made his calculations on that basis; so did his widow when she decided to yield what the law gave her and take what the will gave her; and the direction of the will, it will be observed, is, that $13,000 of the purchase-money of the two farms shall be so invested as that the interest thereon shall be paid annually to the widow, during life, and the principal to the executors on her death. The language of this part of the will puts the testator's meaning beyond doubt. He meant that the two farms should, during the widow's life, stand as security for the payment of her interest. His purpose, as his will declares it, is, " in order that her annual interest may be rendered secure to her," and to accomplish that end, he directs that the $13,000 shall be so invested as that the principal shall not be payable during her life, but that the interest shall, in the meantime, be paid to her annually. His meaning, in that regard, is so entirely clear, that I think if his executors had disregarded it, by attempting to make a contract, by which the rate of interest would have been subject to be changed, to the prejudice of the widow, they would have rendered themselves subject to judicial control at her instance.

But in addition: Under the language of the contracts and the law, there can be no doubt, that the contracts bear interest at the rate of seven per centum, and will continue to do so while they remain in force, unless the widow shall consent to a change. Although the contracts were made by the complainant and his

co-executor, as one of the contracting parties, still they made them as trustees for Mrs. Wyckoff, and hold them for her benefit; she is the owner, in equity, of the interest they produce, and the rate cannot, therefore, be changed without her consent. Especially is this so, so far as the complainant is concerned. He, it will be observed, has voluntarily placed himself in a position where his interests stand in antagonism to those of his *cestui que trust*, and where he is subject to a temptation to betray her interests in order to advance his own. There is strong reason to believe that this suit had its origin in this conflict of interest. A trustee cannot use his position to make a profit out of his *cestui que trust*. Where his interests come in conflict with those of his *cestui que trust*, his must yield.

The complainant's bill is, in my judgment, without the least equity, and must, therefore, be dismissed with costs.